Emily C. Mimnaugh, State Bar No. 15287
PACIFIC JUSTICE INSTITUTE Nevada Office
1580 Grand Point Way #33171
Reno, NV  89533
Tel.:  (916) 857-6900
Fax:  (916) 857-6902
Email: emimnaugh@pji.org

Attorney for Plaintiff

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

MICHAEL E. ANTHONY,

          Plaintiff,

v.

BELLAGIO, LLC, d/b/a/ Bellagio Hotel & Casino, a Domestic Corporation; and MGM RESORTS INTERNATIONAL, a Foreign Corporation.

          Defendant.

) Case No.: 2:23-cv-02144
)
)
)
) **VERIFIED COMPLAINT FOR**
) **VIOLATION OF RIGHTS UNDER TITLE**
) **VII OF THE CIVIL RIGHTS ACT OF 1964**
) **[42 U.S.C. 2000e et seq.]**
)
)
) [Demand for Jury Trial]
)
)

# INTRODUCTION

1.      Plaintiff, Michael E. Anthony ("Mr. Anthony"), brings this action against his former employer Bellagio, LLC, d/b/a Bellagio Hotel & Casino ("Bellagio" and/or "Defendant"), which is a casino resort on the Las Vegas Strip and a subsidiary of MGM Resorts International ("MGMRI" and, together with Bellagio, "Defendants").

2.      This action is based on Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e et seq.) ("Title VII"), Nevada's Equal Opportunities for Employment law (NRS § 613.330 et seq.) and Wrongful Termination in Violation of Public Policy under Nevada State law.

3.      In 2021, MGMRI and Bellagio issued a Covid-19 vaccine mandate that applied to only a fraction of Bellagio's current employees ("Mandate").

4.      The Mandate exempted and did not apply to all of Bellagio's current, non-salary employees in 2021.

5.      The Mandate, upon information and belief, thus exempted and did not apply to the majority of employees who were already employed and working on-site and in-person at Bellagio in 2021.

6.      The Mandate exempted and did not apply to Bellagio's employees who were currently working exclusively from home.

7.      Mr. Anthony belongs to the fraction of Bellagio's employees in 2021 deemed subject to the Mandate because he was a salaried employee who did not work exclusively from home.

8.      Mr. Anthony requested an accommodation from Defendants and explained, in writing, why he could not comply with the Mandate without violating his sincerely held religious beliefs.

9.      Defendants refused to grant Mr. Anthony a reasonable accommodation, stating that it would impose an undue burden on Defendants.

10.      Defendants, however, exempted the majority of its in-person, public-facing employees at the Bellagio from the Mandate, because they were non-salaried employees.

11.     Defendants exempted the majority of Mr. Anthony's immediate co-workers who worked alongside him in the Bellagio as they were non-salaried employees.

12.     Defendants never engaged in an interactive process with Mr. Anthony to discuss accommodation options.

13.     Defendants refused to explain to Mr. Anthony why his requested accommodation would impose a significant cost on them, when the majority of his co-workers were exempted from the same Mandate yet continued to directly interact with customers, wait tables, serve food and pour drinks as hourly employees in non-salaried, union jobs.

14.     An unvaccinated individual exempted from the Mandate for religious reasons poses no greater threat than unvaccinated individuals exempted from the Mandate because they are not salaried employees.

15.     Defendants refused to grant Mr. Anthony a reasonable accommodation, refused to discuss his proposed accommodation options with him and denied him an interactive process.

16.     Defendants fired Mr. Anthony in violation of Title VII and state anti-discrimination laws, forcing Mr. Anthony to file a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

17.      The EEOC issued Mr. Anthony a Notice of Right to Sue Letter ("Notice"), and this Complaint is filed within 90 days of the issuance of that Notice.

## JURISDICTION AND VENUE

18.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that federal questions are raised under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.  This Court has supplemental jurisdiction over Mr. Anthony's related claims arising under corollary state anti-discrimination law pursuant to 28 U.S.C. § 1367(a), and the common law tort of Wrongful Termination in Violation of Public Policy.

19.     Venue is proper in this judicial district under U.S.C § 1391(b), and also under 42 U.S.C. § 2000e-5(f)(3), because Mr. Anthony resides within the District of Nevada, both Defendants maintain significant operations within the District of Nevada, and the location where

the alleged unlawful employment practices took place at the Bellagio is within the District of Nevada.  This case is appropriate for assignment to the Southern Division, consistent with LR IA 1-6, because Mr. Anthony resides in Clark County, both Defendants maintain significant operations within Clark County, and the situs of the alleged unlawful employment practices, the Bellagio, is also located in Clark County.

20.     Mr. Anthony's claims for declaratory relief and all other necessary or proper relief are authorized by 28 U.S.C. §§ 2201-02, Federal Rules of Civil Procedure 57 and 65, and the general legal and equitable powers of this Court, which empower this Court to grant the requested relief.

## **PARTIES**

### **Plaintiff**

21.     Plaintiff Michael E. Anthony currently resides in Clark County, Nevada, and he has resided in Clark County, Nevada at all times relevant to this Complaint.

22.     Mr. Anthony was employed by Defendants as an Assistant Manager for Banquet Services at the Bellagio in Clark County, Nevada at all times relevant to this Complaint.

23.     Mr. Anthony was indirectly employed by Defendant MGMRI in Clark County, Nevada at all times relevant to this Complaint.

24.     Mr. Anthony has been a devout, born-again Christian and pro-life Believer for almost forty years.

25.     Mr. Anthony's religious beliefs are sincerely held.

26.     Mr. Anthony's sincerely held religious beliefs prevent him from receiving a Covid-19 vaccine without violating his faith.

27.     Mr. Anthony, on or about September 9, 2021, submitted a written request to Defendants for religious accommodation in relation to the Mandate and in which he suggested multiple accommodations, including masking and regular testing.  A true and correct copy of Mr. Anthony's request for accommodation ("Accommodation Request"), along with a personal letter

of support from the pastor where he attends church and which he attached to his Accommodation Request, accompanies this Complaint, is incorporated in full, and is marked as **Exhibit 1**.

28.     Mr. Anthony, on or about September 10, 2021, received a multi-page "packet" of pre-scripted, form questions interrogating him about his religious beliefs, asking whether he belongs to an "organized" religion and delving into his medical history ("Religious Interrogation Packet").  A true and correct copy of the Religious Interrogation Packet accompanies this Complaint, is incorporated in full, and is marked as **Exhibit 2**.

29.     Mr. Anthony, despite the invasive nature of this questioning and the short timeframe in which he was ordered to reply, provided full, hand-written responses to every question, along with considerable Biblical citations on or about September 16, 2021, ("Interrogation Response").  A true and correct copy of Mr. Anthony's Interrogation Response accompanies this Complaint, is incorporated in full, and is marked as **Exhibit 3**.

30.     Three days later, Mr. Anthony's accommodation request was rejected on or about Sunday, September 19, 2021, informing him that there was no possibility of appeal and giving him an ultimatum to either receive the vaccine or face termination ("Accommodation Denial").  A true and correct copy of the Accommodation Denial accompanies this Complaint, is incorporated in full, and is marked as **Exhibit 4**.

31.     Mr. Anthony was terminated by Defendants on or about October 15, 2021.

32.     Mr. Anthony timely filed an Initial Inquiry with the EEOC and timely signed and filed a Charge of Discrimination with the EEOC on or about May 11, 2022 (Charge No. 487-2022-00152), which was dual-filed with the Nevada Equal Rights Commission ("NERC").  A true and correct copy of Mr. Anthony's EEOC Charge of Discrimination accompanies this Complaint, is incorporated in full, and is marked as **Exhibit 5**.

33.     The EEOC issued Mr. Anthony the Notice of Right to Sue on or about October 2, 2023, and he filed this Complaint within 90 days of the issuance of that Notice.  A true and correct copy of the EEOC's Notice to Mr. Anthony accompanies this Complaint, is incorporated in full, and is marked as **Exhibit 6**.

**Defendants**

34.     Defendant MGM Resorts International (MGMRI) is a foreign Corporation registered with the Nevada Secretary of State to do business in the State of Nevada.

35.     Defendant MGMRI has continuous and ongoing business operations in the state of Nevada and Clark County and engages in an industry affecting commerce.

36.     Defendant MGMRI, upon information and belief, has had more than 500 employees at all times relevant to this Complaint.

37.     Defendant MGMRI is an employer for purposes of Title VII.

38.     Defendant MGMRI is an employer for purposes of Nevada's Equal Opportunities for Employment law, per NRS § 613.310(2).

39.     Defendant Bellagio, LLC is a Nevada Limited Liability Corporation.

40.     Defendant Bellagio is an employer for purposes of Title VII.

41.     Defendant Bellagio is an employer for purposes of Nevada's Equal Opportunities for Employment law, per NRS § 613.310(2).

42.     Defendant Bellagio has continuous and ongoing business operations in the state of Nevada and Clark County and engages in industry affecting commerce.

43.     Defendant Bellagio is a subsidiary of Defendant MGMRI.

44.     Defendant MGMRI provides certain shared services to its subsidiaries, including legal and human resources support.

45.     Defendant Bellagio received support from Defendant MGMRI's legal department directly in relation to Mr. Anthony's Accommodation Request.

46.     The true names and capacities, whether individual, corporate, associate or otherwise, of DOES 1-50, inclusive, are unknown to Mr. Anthony at this time, who therefore sues said Defendants by such fictitious names.  Mr. Anthony is informed and believes and thereon alleges that each fictitiously named Defendant is in some way responsible for, or participated in, or contributed to the matters and events complained of herein and is legally responsible in some

manner.  Mr. Anthony will seek leave to amend this Complaint when the true names, capacities and responsibilities have been ascertained.

## FACTS

*Employment as an Assistant Manager*

47.    Mr. Anthony began working at the Bellagio as an Assistant Manager of Banquet Services in March 2015.

48.    As an Assistant Manager, Mr. Anthony's primary duty was to oversee events in the banquet rooms.  This required him to confirm that food quantities, room set up and overall room maintenance was correct.

49.    Throughout his tenure as an Assistant Manager, Mr. Anthony never received a negative work review; he received a performance bonus each year.

50.    Mr. Anthony's immediate co-workers at the Bellagio included line cooks, convention porters, banquet food servers, and environmental service works ("EVS") workers. These co-workers were employed in hourly-based, non-salaried jobs.

51.    Upon information and belief, at all times relevant to this Complaint, the majority of Defendant Bellagio's employees held hourly-wage, non-salaried jobs.

*Announcement of Mandate: August 2021*

52.    On or around August 16, 2021, Defendant MGMRI announced that it was implementing a Covid-19 vaccine mandate for all current, salaried employees ("MGMRI Mandate").  The MGMRI Mandate exempted all current non-salaried employees, and it exempted all current employees who worked exclusively from home.  A true and correct copy of the MGMRI Mandate accompanies this Complaint, is incorporated in full, and is marked as **Exhibit 7**.

53.    On or around August 16, 2021, Defendant Bellagio issued its Company Policy / Procedure with respect to the MGMRI Mandate (the "Bellagio Policy" and, together the MGMRI Mandate, the "Mandate").  A true and correct copy of the Bellagio Policy accompanies this Complaint, is incorporated in full, and is marked as **Exhibit 8**.

54.     Whether or not the Mandate applied to a current Bellagio employee who worked on-site did not depend upon the employee's job duties.

55.     Rather, whether the Mandate applied to a current Bellagio employee turned upon whether the individual was a salaried employee or an hourly, non-salaried employee.

56.     In other words, the Mandate only applied to a fraction of Defendant Bellagio's current employees who worked in-person and on-site.

57.     The Mandate exempted the majority of Defendant Bellagio's current employees, including those who directly interacted with unmasked customers and guests at the Bellagio, because they were non-salaried employees.

***Request for Religious Accommodation***

58.     The Mandate did not provide current employees with notice of their ability to specifically request a religious accommodation.

59.     The Mandate instead provided the following generic notice:

> **Requests for Accommodations**
> MGM Resorts will consider requests to be excused from this policy when necessary to comply with legal requirements. MGM Resorts will consider any requests for accommodations on an individual basis in accordance with applicable legal requirements.
> Employees requesting accommodations should login to My MGM and search "Request an Accommodation" to complete the *Request for Workplace Accommodation Form*. New hires requesting accommodations should contact their Talent Acquisition representative. Employees should explain the reasons why they are seeking the accommodation in detail. MGM Resorts will request additional information or documentation it deems necessary or appropriate to inform its decision on an employee's accommodation request."

Bellagio Policy (Exhibit 8, p. 2).

60.     On or about September 9, 2021, Mr. Anthony submitted his Accommodation Request to Defendants.  Exhibit 1.

61.     Mr. Anthony clearly stated the following religious-based conflict with the Mandate in his Accommodation Request:

> "As a born again Christian I have serious reservations about taking vaccines that may have used human fetal tissue. I strongly oppose abortion and believe life begins at conception. I do not understand why I am being asked to compromise my religious beliefs or be terminated October 15, 2021."

Accommodation Request (Exhibit 1, p. 2).

62.    Mr. Anthony also attached to his Accommodation Request a personal letter written and signed by his own pastor, Pastor Jimmy Morales, who heads the church Mr. Anthony has attended for the better part of a decade.  See Exhibit 1.

63.    Mr. Anthony's pastor further described the Christian teachings of their church and their born-again Christian, pro-life, anti-abortion beliefs which are inherently and inextricably rooted in these sincerely held religious beliefs:

> **[T]he well-documented process of vaccines developed from animal and aborted human fetal tissue** has compelled us to stand by our congregants who refuse to comply with mandatory vaccinations.  We strongly support Michael [Anthony]'s deeply held Biblical conviction. . . **We are convinced by our deeply held belief in the Bible that we must repudiate medical research that continues to utilize and thus prop up the gristly and inhuman practice of abortion**."

Accommodation Request (Exhibit 1, p. 4) (emphasis added).

64.    Mr. Anthony submitted his Accommodation Request to the designated online HR portal, and it was automatically sent to Dana Howell, Vice President and Legal Counsel of MGMRI.

65.    Jennifer Berthiaume, Legal Executive Assistant to Ms. Howell, emailed Mr. Anthony the Religious Interrogation Packet, which consisted of three pages of pre-written form questions challenging the validity of an employee's faith and the receipt of any previous medical care.  See Exhibit 2, p. 1.

66.    The Religious Interrogation Packet was pre-written; it was not prepared for Mr. Anthony based upon the content of his Accommodation Request or a specific, objective reason to question the sincerity of his religious beliefs.

67.    The Religious Interrogation Packet informed Mr. Anthony that he was to review the questions, respond to each question, acknowledge the threat of disciplinary action for any

intentional microtransaction, and return the signed, completed Religious Interrogation Packet via email within seven calendar days.

68.    Mr. Anthony timely provided his Interrogation Response, with full replies to each of the questions, on or about September 16, 2021.  See Exhibit 3.

69.    Mr. Anthony, in his Interrogation Response, again explained that his sincerely held religious beliefs compel him to reject abortion and the fruits thereof.  Mr. Anthony could not reconcile his spiritual conscience and religious beliefs with the Covid-19 vaccines' ties to abortion.

70.    Mr. Anthony's Interrogation Response included the following, unequivocal religious beliefs and statements:

- o  "Jesus Christ is my Lord and Savior (2nd Corinthians 5:17)."

- o  "As a bible believing Christian I strongly oppose abortion and the well-documented process of vaccines developed from aborted human fetal tissue."

- o  "My accommodation request is based on my faith in Christ… Pfizer & Moderna both used HEK 293 cells descended from elective abortions [in] 1973."

- o  [Question: Would receiving a COVID-19 vaccine interfere with your ability to practice your religion?] "Yes. See bible verses [Psalm] 139:13-16, Jeremiah 1:5, Proverbs 6:16-17 * James 5:17 For me to know the right thing to do and not to do it is sin.  We all sin but I practice not to willfully sin.  1 Corinthians 6:19."

- o  "I have a sincerely held religious belief against receiving the Covid vaccine."

- o  "My faith believes the bible.  We strongly oppose the inhuman practice of abortion."

Questionnaire Response (Exhibit 3, pp. 4-5).

71.    As Mr. Anthony's Interrogation Response states, there is a "well-documented " connection between abortion, fetal cell lines and the development of the Covid-19 vaccines.

72.    The government publication, for example, titled "Los Angeles County Covid-19 Vaccine and Fetal Cell Lines," was produced by the Los Angeles Department of Public Health

("LADPH") on April 20, 2021.  A true and correct copy of this LADPH publication accompanies this Complaint, is incorporated in full, and is marked as **Exhibit 9**.

73.     The LADPH confirmed that in various stages of development, testing and/or production, each of the three Covid-19 vaccines available in the United States in August 2021 used cells originally isolated from fetal tissue, some of which were originally derived from an aborted fetus. See Exhibit 9.

74.     The LADPH stated Johnson & Johnson's vaccine was developed, tested, and produced with the help of abortion-derived cell lines; Pfizer and Moderna's vaccines both used an abortion-derived cell line for testing their respective vaccines.  See Exhibit 9.

75.     The North Dakota Department of Health ("NDH") produced a similar document confirming the connection between the Covid-19 vaccines and fetal tissue.  A true and correct copy of this NDH publication accompanies this Complaint, is incorporated in full, and is marked as **Exhibit 10**.

***Refusal of Accommodation & Denial of Interactive Process***

76.     On or about Sunday, September 19, 2021, Defendants denied Mr. Anthony's Accommodation Request and emailed him the Accommodation Denial.  See Exhibit 4.

77.     The Accommodation Denial told Mr. Anthony that his "continued presence on property, unvaccinated risks the health and safety of guests, coworkers, and yourself." Accommodation Denial (Exhibit 4, p. 2).

78.     Mr. Anthony had suggested multiple possible accommodations in both his Accommodation Request and again in his Interrogation Response; mitigation measures he suggested and already in place for others exempted from the Mandate included masking, regular testing, increased hand washing and social distancing.  Mr. Anthony even suggested he would take any different, remote-work position that might be available in order to remain employed.  See Exhibits 1, 3.

79.     The Accommodation Denial flatly informed Mr. Anthony that "the risks and burdens your request for accommodation would impose on the Company are significant and cannot be resolved through mitigation measures."  Accommodation Denial (Exhibit 4, at p. 2).

80.     The Accommodation Denial did not explain why mitigation measures were adequate for non-salaried Bellagio employees who, despite their "unvaccinated presence," worked in-person, interacted directly with unmasked customers and guests, but the same mitigation measures could not be offered to Mr. Anthony. Accommodation Denial (Exhibit 4, at p. 2).

81.     Prior to the Accommodation Denial, Defendants never allowed Mr. Anthony an in-person meeting, a video conference or other teleconference meeting specifically to discuss his proposed accommodations or any alternate work position assignment; no such conversation ever occurred between Mr. Anthony and the MGMRI legal department, the MGMRI human resources team or any other Bellagio equivalent.

82.     Prior to the Accommodation Denial, Defendants never allowed Mr. Anthony an email conversation to discuss his proposed accommodations or any alternate work position assignment; no such email conversation ever occurred between Mr. Anthony and the MGMRI legal department, the MGMRI human resources team or any other Bellagio equivalent.

83.     Prior to the Accommodation Denial, Defendants never spoke to Mr. Anthony's supervisor, Mark Gilbert, about Mr. Anthony's specific job duties or potential accommodations.

84.     Prior to the Accommodation Denial, Defendants never spoke with Mr. Gilbert about ways to adopt the same mitigation measures already in place for Mr. Anthony's unvaccinated, non-salaried co-workers who were allowed to continue to work in-person and serve food and drink directly to unmasked customers and guests.

85.     Indeed, Defendants' only follow-up with Mr. Anthony about his Accommodation Request was to send him the pre-written Religious Interrogation Packet.  See Exhibit 2.

86.     Defendants denied Mr. Anthony any opportunity to speak live to any person about potential accommodation options specifically or even his Accommodation Request generally.

87.     The Religious Interrogation Packet was a pre-written, multi-page set of questions aimed at undermining the sincerity of an employee's faith and the validity of faith outside of a specific, "organized" religion.  Religious Interrogation Packet (Exhibit 2, p. 2).

88.     Mr. Anthony did not receive a meaningful interactive process with Defendants about his Accommodation Request.

89.     The Accommodation Denial told Mr. Anthony that "an undue hardship exists when an accommodation would cause **more than a de minimis cost or burden** on the employer. . . Granting your request would therefore constitute an undue hardship on the Company, and we must deny your request for religious accommodation on that basis."  Accommodation Denial (Exhibit 4, at p. 2) (emphasis added).

90.     Mr. Anthony's unvaccinated presence was deemed a health and safety risk that "cannot be resolved through mitigation measures," even while at that exact moment the majority of his co-workers were exempted from the Mandate, including those who directly served food and drink to unmasked guests on a daily basis as part of their essential job functions on the banquet floor and throughout the Bellagio. Accommodation Denial (Exhibit 4, at p. 3).

91.     A reasonable accommodation for Mr. Anthony would not impose *significant difficulty or expense* on Defendants.

92.     The Accommodation Denial informed Mr. Anthony on or about September 19, 2021, that his Accommodation Request was denied. Accommodation Denial (Exhibit 4, at p. 1).

93.     The Accommodation Denial informed Mr. Anthony that there was no possibility of appeal. Accommodation Denial (Exhibit 4, at p. 3).

94.     The Accommodation Denial informed Mr. Anthony that he had 24 hours in which he must either declare his intent to comply with the Mandate or his position would be filled by October 15, 2021, and he would be terminated. Accommodation Denial (Exhibit 4, p. 3).

95.     Forced to choose whether to obey the dictates of his faith or the dictates of the Defendants, Mr. Anthony chose his faith.

96.     Mr. Anthony was subsequently terminated on or around October 15, 2021 by Defendants.  See Exhibit 5.

97.     Mr. Anthony timely signed and filed a Charge of Discrimination with the EEOC on or about May 11, 2022 (Charge No. 487-2022-00152).  See Exhibit 5.

98.     Mr. Anthony's EEOC Charge of Discrimination was automatically dual-filed with the Nevada Equal Rights Commission ("NERC"), pursuant to a Worksharing Agreement between the EEOC and NERC. See Exhibit 5.

99.     Mr. Anthony has exhausted administrative remedies, and the EEOC issued Mr. Anthony the Notice of Right to Sue on or about October 2, 2023. See Exhibit.

## FIRST CAUSE OF ACTION

**DISPARATE TREATMENT – FAILURE TO PROVIDE RELIGIOUS ACCOMMODATION**
**Violation of Title VII of the Civil Rights Act of 1964**
Against All Defendants
(42 U.S.C. § 2000e et seq.)

100.    Mr. Anthony hereby realleges and incorporates by reference the preceding paragraphs, as though fully set forth herein.

101.    At all times relevant to this Complaint, Title VII was in full force and effect and was binding on Defendants.

102.    At all times relevant to this Complaint, Mr. Anthony was legally entitled to the full protection of Title VII as an employee of Defendants.

103.    At all times relevant to this Complaint, Mr. Anthony was performing competently in his position as an employee of Defendants.

104.    Mr. Anthony has bona fide religious beliefs that conflicted with an employment requirement, specifically, the receipt of a Covid-19 vaccine; Mr. Anthony informed Defendants of such religious beliefs.  Mr. Anthony was terminated for failure to comply with the conflicting employment requirement.

105.    Title VII makes it an unlawful employment practice to fail or refuse to reasonably accommodate the religious beliefs and practices of an employee.

106.    There is a dispute between Defendants and Mr. Anthony.  Defendants assert that they can automatically undertake a detailed probe of the sincerity of the religious beliefs of its employees; this includes placing the burden on the employee to provide an objective basis for religious convictions regarding the refusal to receive a Covid-19 vaccine.  Mr. Anthony disagrees.  Because faith is intrinsically subjective, a religious objector cannot be held to an objective measure of proof regarding what lays in his heart, mind and soul.  Belief in what one may demonstrate to the senses is not faith.  Mr. Anthony asserts that Title VII presumes sincerity of belief by an employee, and therefore Defendants' standardized practice of sending via email a pre-written, multi-page Religious Interrogation Packet is unlawful and cannot be automatically demanded of any employee seeking religious accommodation related to the Mandate.  Mr. Anthony's legal position is that, although an employee's faith may be deemed as heresy to some and incomprehensible to others, employers cannot require orthodoxy of employees according to a generally recognized religion or "organized" religion or demand that employees be put to the proof of their religious beliefs.

107.    An accommodation request under Title VII requires an interactive process between the employer and employee.

108.    There is a dispute between Defendants and Mr. Anthony.  Defendants assert that an employer can unilaterally declare that no accommodation is possible without any direct discussion with an employee.  Defendants assert that an email with a pre-written Religious Interrogation Packet followed by an email notice denying accommodation constitutes an interactive process under Title VII.  Mr. Anthony disagrees.  Mr. Anthony asserts that Title VII is premised on bilateral cooperation between employers and employees.  Mr. Anthony asserts that Title VII requires an employer to take the initial step towards accommodating an employee's conflicting religious practice by suggesting one or more possible accommodations.  Mr. Anthony asserts that

good faith discussion of, and negotiation about, potential accommodations is the first requirement of Title VII, and failure to do so is a violation of Title VII.

109.    Defendants did not discuss accommodation possibilities with Mr. Anthony after he requested religious accommodation and suggested multiple reasonable accommodations already in place for other employees exempted from the Mandate.  Instead, Defendants subjected Mr. Anthony to the Religious Interrogation Packet, informed Mr. Anthony via email that his continued unvaccinated presence could not be resolved through any mitigation measures and gave him a 24-hour ultimatum to comply with the Mandate or lose his job.  See Exhibit 4, p. 3.

110.    Defendants refused to engage in an interactive process with Mr. Anthony to discuss his job duties, his proposed reasonable accommodations, possible job modifications or reassignment in violation of Title VII.

111.    Defendants failed to provide reasonable alternative means of accommodating a religious observance, practice or belief that conflicted with a workplace requirement, i.e., the Mandate requiring Covid-19 vaccination.

112.    Failure to accommodate an employee's religious practice and beliefs can be raised as a disparate-treatment claim because Congress defined "religion" in Title VII to include all aspects of religious observance and practice, as well as belief.

113.    Religious observances, practices and beliefs cannot be accorded disparate treatment and must be accommodated.

114.    Title VII does not limit disparate-treatment claims to only those employer policies that treat religious practices less favorably than similar secular practices.

115.    Title VII requires otherwise-neutral practices to give way to the need for an accommodation.

116.    There is a dispute between Defendants and Mr. Anthony.  Defendants assert that no accommodation was possible for Mr. Anthony, as an employee of unvaccinated status due to his religious beliefs, who worked in-person at the Bellagio.  Mr. Anthony disagrees.  Mr. Anthony asserts that multiple mitigation measures were available as a reasonable accommodation, including

those already in place for other unvaccinated employees working in-person at the Bellagio and working directly with unmasked members of the public.

117.    Defendants exempted from the Mandate non-salaried employees who worked alongside Mr. Anthony in the banquet space at the Bellagio and who directly served food and drink to unmasked customers, despite their unvaccinated status.

118.    Unvaccinated employees exempted from the Mandate because they are not salaried employees pose the same threat as an unvaccinated employee exempted from the Mandate for religious reasons.

119.    A reasonable accommodation for Mr. Anthony would not have imposed significant difficulty or expense on Defendants.

120.    Defendants failed to provide Mr. Anthony religious accommodation and terminated him in violation of Title VII.

121.    Mr. Anthony exhausted his administrative remedies under Title VII, the EEOC issued him a Notice of Right to Sue, and he filed this Complaint within 90 days of the issuance of the Notice.  See Exhibits 5, 6.

122.    Mr. Anthony suffered significant damages because of Defendants' unlawful actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

123.    Defendants intentionally violated Mr. Anthony's rights under Title VII with malice or reckless indifference.

124.    Mr. Anthony is legally entitled to backpay, front pay, compensatory damages, punitive damages, attorney's fees, costs of suit, and a declaration that Defendants violated his rights under Title VII.

125.    Mr. Anthony is legally entitled to further relief as more fully set forth below in his Prayer for Relief.

## SECOND CAUSE OF ACTION

### FAILURE TO PROVIDE RELIGIOUS ACCOMMODATION

**Violation of Nevada's Equal Opportunities in Employment law**

Against all Defendants

(NRS § 613.330)

126.    Mr. Anthony hereby incorporates and realleges the preceding paragraphs, as though fully set forth herein.

127.    Nevada's anti-discrimination statutes (NRS § 613.330 et seq.) make it an unlawful employment practice to discharge any individual because of his religion.

128.    At all times relevant to this Complaint, Nevada's anti-discrimination statutes were in full force and effect and were binding on Defendants.

129.    At all times relevant to this Complaint, Mr. Anthony was legally entitled to the full protection of Nevada's anti-discrimination statutes as an employee of Defendants.

130.    In light of the similarity between Title VII and Nevada's anti-discrimination statutes, the state courts have looked to the federal courts for guidance on discrimination cases; claims for unlawful discrimination under NRS § 613.330 are analyzed under the same principles applied to similar Title VII claims.

131.    Defendants failed to provide reasonable alternative means of accommodating the religious belief or observance that conflicted with the work requirement, i.e., Covid-19 vaccination.

132.    Accommodating Mr. Anthony would not have posed a significant difficulty or expense on Defendants.

133.    Mr. Anthony exhausted his administrative remedies under Nevada's anti-discrimination laws because the Charge of Discrimination was dual-filed with the EEOC and NERC, Mr. Anthony received his Notice of Right to Sue, and he filed this Complaint within 90 days of the issuance of the Notice. See Exhibits 5, 6; NRS §§ 613.412, 613.420, 613.430.

134.    Mr. Anthony suffered significant damages because of Defendants' unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

135.    Defendants intentionally violated Mr. Anthony's rights under Nevada's anti-discrimination laws with malice or reckless indifference.

136.    Mr. Anthony is entitled to back pay, front pay, compensatory damages, punitive damages, attorney's fees, costs of suit, and a declaration that Defendants violated his rights under Nevada's anti-discrimination laws. See NRS § 613.432.

137.    Mr. Anthony is entitled to further relief as more fully set forth below in his Prayer for Relief.  See NRS § 613.432.

### THIRD CAUSE OF ACTION

#### TORTIOUS DISCHARGE

**Wrongful Termination in Violation of Public Policy**

Against All Defendants

(Nevada State Law Violation – Common Law Tort)

138.    Plaintiff hereby realleges and incorporates by reference the preceding paragraphs, as though fully set forth herein.

139.    Nevada courts have recognized public policy tort liability where a comprehensive statutory remedy does not exist or does not provide a full remedy.

140.    Nevada courts have recognized that the essence of a tortious discharge is the wrongful interruption of employment by means which are deemed to be contrary to the public policy of the State of Nevada.

141.    A public policy tort cannot ordinarily be committed absent the employer-employee relationship, but the tort, the wrong itself, is not dependent upon or directly related to a contract of continued employment.

142.    Tortious discharge can be established under Nevada law when an employer terminates an employee for engaging in conduct which public policy favors.

143.    Defendants tortiously discharged Mr. Anthony by terminating him for reasons that violate public policy.

144.    Specifically, Defendants terminated Mr. Anthony after his religious beliefs were

scrutinized, automatically subjected to interrogation and after Defendants denied him accommodation from the Mandate, even though multiple mitigation procedures were already available, in place for others exempted from the Mandate, and would not have imposed a significant cost or burden on Defendants.

145.    To the extent the Mr. Anthony is not provided with an adequate and full remedy through existing statutory remedies, he is legally entitled to further and full relief for the public policy tort of tortious discharge.

## **PRAYER FOR RELIEF**

WHEREFORE, MR. ANTHONY respectfully prays this Court grant relief as follows:

A.  Award Plaintiff backpay, including past loss of wages and benefits, plus interest;

B.  Award Plaintiff front pay, including future wages and benefits;

C.  Award Plaintiff other and further compensatory damages in an amount according to proof;

D.  Award Plaintiff noneconomic damages, including but not limited to mental suffering;

E.  Award to Plaintiff his reasonable attorney's fees and costs of suit;

F.  Award Plaintiff punitive damages;

H.  Declare that Defendants violated Title VII of the Civil Rights Act and NRS § 613.330 et seq.; and

I.   Grant Plaintiff such additional or alternative relief as the Court deems just and proper.

Dated:  December 28, 2023

/s/ Emily C. Mimnaugh
Emily C. Mimnaugh
PACIFIC JUSTICE INSTITUTE, Nevada Office
1580 Grand Point Way #33171
Reno, NV 89533
Telephone:  (916) 857-6900
Fax:  (916) 857-6902

Email:  emimnaugh@pji.org

*Attorney for the Plaintiff, Michael E. Anthony*

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all causes of action and claims to which he has a right to a jury trial.

/s/ Emily C. Mimnaugh
Emily C. Mimnaugh
PACIFIC JUSTICE INSTITUTE, Nevada Office
1580 Grand Point Way #33171
Reno, NV 89533
Telephone:  (916) 857-6900
Fax:  (916) 857-6902
Email:  emimnaugh@pji.org


*Attorney for the Plaintiff, Michael E. Anthony*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**VERIFICATION**

I, Michael E. Anthony, am the Plaintiff in the above-captioned matter. I have read the

VERIFIED COMPLAINT FOR VIOLATION OF RIGHTS UNDER TITLE VII OF THE CIVIL

RIGHTS ACT OF 1964 [42 U.S.C. 2000e et seq.] and am familiar with same. The contents are

true and accurate and known to me by personal knowledge except for those matters asserted on

information and belief. As to those matters, I believe them to be true.

I declare under penalty of perjury, under the laws of the United States and the State of

California, that the foregoing is true and correct. Executed this **28** day of December, 2023, in

the County of Clark, State of Nevada.

Michael E. Anthony